**ALLURE HOME CREATION CO., INC., Plaintiff,**

v.

**LAMONT LIMITED and Lamont International Inc., Defendants.**

No. 97 Civ. 1290 (DC).

United States District Court, S.D. New York.

June 12, 1998.

Frommer Lawrence & Haug L.L.P. by William F. Lawrence, Edgar H. Haug, James K. Stronski, New York City, for Plaintiff.

Hopgood, Calimafde, Kalil & Judlowe L.L.P. by Dennis J. Mondolino, Alan Feder-bush, Peter K. Trzyna, New York City, for Defendants.

## OPINION

CHIN, District Judge.

In this patent case involving collapsible clothes hampers, plaintiff Allure Home Creation Co., Inc. ("Allure") alleges that defendants LaMont Limited and LaMONT International Inc. (collectively "LaMont") have willfully infringed United States Patents 5,356,024 (the "'024 patent") and 5,464,113 (the "'113 patent"). Defendants move for summary judgment. For the reasons set forth below, the motion is granted and plaintiff's complaint is dismissed.

## BACKGROUND

### A. The Facts

Allure develops, markets, and imports various home products, including collapsible clothes hampers. Allure has marketed its collapsible hampers since approximately 1992. The hampers have been a "considerable commercial success" because their small size permits merchants to stock large numbers of hampers in a small space, requiring less shelf and warehouse space, which translates into lower sales costs. (Pl. Opp. at 3).

The hampers are covered by two patents, the '024 and '113 patents. The '113 patent is a continuation of the '024 patent. The caption, "Collapsible Hamper for Storage of Laundry and Other Items," appears on both patents. (Pl. Opp. Exs. 5 & 6). In addition, both patents contain the following abstract:

> The present invention relates to a collapsible hamper, used for the storage of laundry or other items comprising a rigid upper frame, a rigid lower frame, a lid movably hinged to the upper frame, a flexible side wall woven out of polypropylene strips, fabric or other weavable material, and a plurality of supporting rods removably secured between the upper and lower rigid frames, which define a three dimensional internal storage space and decorative external structure that is attractive to the eye when the hamper is assembled for use and which can be easily

disassembled and collapsed for convenient storage or transport when not in use.

(*Id.*) Figure 1 of both patents illustrates the hamper when assembled and fully erect. A copy of that figure is annexed to this decision as Exhibit 1. Figure 2 of both patents depicts the hamper in its collapsed fashion. That figure is annexed to this decision as Exhibit 2.

Allure alleges infringement of claims 6, 7, 8, and 17 of the '024 patent and claims 1, 2, 4, 5, 7, 14, and 15 of the '113 patent. (Defs. Mem. Ex. C, Response to Interrogatories No. 1 and No. 3). Allure concedes, however, that claims 7 and 8 of the '024 patent are dependent on claim 6 of that patent; claims 2, 4, and 5 of the '113 patent are dependent on claim 1 of that patent; and claim 15 of the '113 patent is dependent on claim 14 of that patent. (Pl. 56.1 Statement ¶¶ 8, 10, 11). Hence, the only claims that need to be addressed on this motion are claims 6 and 17 of the '024 patent and claims 1, 7, and 14 of the '113 patent.[1]

Claim 6 is illustrative of claims 17, 1, and 7. It reads:

A collapsible hamper comprising:

a side wall substantially fabricated of a sheet of flexible material;

an upper rigid frame;

a lower rigid frame;

the top and bottom edges of said side wall being secured about the outside circumferential surface of said upper rigid frame of said lower rigid frame respectively;

a plurality of supporting rods *removably secured* and extending between the downward surface of said upper rigid frame and the upward surface of said lower rigid frame to define a three dimensional internal storage space; and

a lid *hingably [sic] fixed* to the upward surface of said upper rigid frame, said lid covered with the same flexible material as that comprising said side wall;

said upper rigid frame being fabricated from a molded polymeric material and comprising,

a rectangular outside wall, and

a rectangular inside wall,

said outside wall having a circumference greater than said inside wall,

a horizontal wall of uniform thickness extending between the respective upper edges of said inside wall and outside wall,

plurality of ribs, downwardly extending from the bottom surface of said horizontal wall, between said inside and outside walls, and

a plurality of cavities on the lower edges of said downwardly extending ribs for *removably securing* each said supporting rod in a substantially vertical position when said hamper is assembled for use,

said upper rigid frame structure defining a rectangular opening within the inside surface of said inside wall to accommodate storage and removal of items in the said hamper when assembled for use.

(Pl.Opp.Ex. 5) (emphasis added). Claim 14 is different from the other four claims in issue. It reads:

A kit for assembly into a collapsed container comprising:

an upper rigid frame . . . .

a plurality of supporting rods having a length sufficient to maintain the side wall in tension between the upper and lower rigid frames, each rod having a first end for matingly and *removably fitting* into one of said first cavities and a second end for matingly and *removably fitting* into one of said second cavities, wherein

each of said first and second cavities are paired in substantial alignment to receive said rods with tension on the side wall when the container is assembled, and

the side wall and upper and the lower rigid frames collapse as one unit when the plurality of supporting rods are not assembled into the plurality of the first and second cavities and the container is not assembled.

---

1. Because there is no overlap of claim numbers in the claims at issue, they are hereafter referred to without identifying the patent with which they are associated. Claims 6 and 17 refer to the '024 patent and claims 1, 7, and 14 refer to the '113 patent.

(*Id.* Ex. 6) (emphasis added). The term "removably" appears twice in each of the disputed claims except claim 1. (*See id.,* claim 1).

LaMont manufactures and sells a collapsible clothes hamper designated as the model Z3 hamper.[2] Like Allure's hamper, the Z3 hamper has both an upper rigid frame and a lower rigid frame with a lid that is hingeably fixed to the upper rigid frame. The Z3 hamper differs from the Allure hamper in one significant respect: while the Allure hamper uses support rods that are removable from the apparatus and that are removably fitted into cavities in the top, the Z3's supporting rods are permanently affixed to the top of the hamper and are hinged so that they fold. (Ziglar Aff. ¶¶ 14–19). A drawing that appears at page 8 of LaMont's memorandum of law in support of their motion depicts the Z3 hamper and is annexed to this decision as Exhibit 3.

### B. *Prior Proceedings*

Allure filed this patent infringement action on February 24, 1997. The complaint alleges willful infringement of plaintiff's '024 and '113 patents. LaMont denied infringement and filed a counterclaim for a declaratory judgment that the patents-in-suit are invalid and unenforceable. Before the parties completed discovery, LaMont moved for summary judgment on the issue of non-infringement. Allure objected to the motion as premature.

The parties completed discovery while the motion was pending. Once discovery was complete, Allure requested in a letter dated May 29, 1998 that, pursuant to Fed.R.Civ.P. 56(f), the Court consider additional declarations in support of its opposition to defendants' motion. In addition, Allure sought permission to cross move for summary judgment on claims 1, 2, and 4 of the '113 patent. I have considered the additional materials supplied by plaintiff but they do not affect my decision. In addition, because I am granting defendants' motion for summary

judgment, any cross-motion by plaintiff for summary judgment would be futile.

### DISCUSSION

### A. *Summary Judgment Standards*

The standards governing motions for summary judgment are well-settled. Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record supporting a jury verdict in the nonmoving party's favor. *See id.* at 249–50, 106 S.Ct. 2505.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party may not rest upon mere "conclusory allegations or denials," but must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach,* 708 F.Supp. 1371, 1379 (S.D.N.Y.1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984)).

Summary judgment is appropriate in patent cases, as in other cases, where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Indeed, the motion of an alleged infringer for summary judgment on non-infringement grounds "may be granted where the patentee's proof is deficient in meeting

---

**2.** Both parties discuss defendants' prior hamper designs designated as the Z1 and Z2 hampers. Plaintiff characterized defendants' discussion of these prior hampers as an attempt by defendants to prove prior art under 35 U.S.C. § 102. (*See* Pl. Letter 5/29/98). Plaintiff submitted additional deposition testimony to the Court that calls into question the circumstances under which these prior models were created and what features these hampers contained. (*Id.* Exs. A & B). Defendants' Z1 and Z2 hampers are not relevant, however, to whether the Z3 hamper infringes plaintiff's hamper.

an essential part of the legal standard for infringement." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir.1989) (citations omitted).

### B. *Patent Infringement*

█ The determination of whether a patent has been infringed involves a two-part analysis. First, the meaning and scope of the patent claims asserted to be infringed must be determined as a matter of law. Second, the properly construed claims must then be compared with the accused device. *See Carlisle Plastics, Inc. v. Spotless Enters., Inc.*, 984 F.Supp. 646, 655 (E.D.N.Y.1997). Here, the second part of this analysis must be performed twice: first, to determine whether there is literal infringement, and, second, to determine whether there is infringement under the doctrine of equivalents.

### 1. *Construction of Patent Claims*

█ The "construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). To properly construe a patent claim, the court must first look to intrinsic evidence: the claims at issue, other parts of the patent, and the prosecution history if it is in evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). The court may also consider extrinsic evidence such as expert testimony. *Hydraflow v. Enidine Inc.*, 907 F.Supp. 639, 648 (W.D.N.Y.1995). In most cases, however, analyzing the intrinsic evidence alone will resolve any ambiguity in the language of a claim and, in these cases, extrinsic evidence may not be considered. *Carlisle Plastics*, 984 F.Supp. at 655.

█ When construing a claim, the court is to give claim terms their ordinary and accustomed meaning unless an examination of the specification, prosecution history, and other claims indicates that the inventor intended otherwise. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed.Cir. 1994). An inventor is free to become his or her own lexicographer and to give claim terms special, uncommon meanings. The in-

ventor must, however, clearly state the special definition of the term in the patent specification or file history. *Vitronics*, 90 F.3d at 1582.

The critical issue presented by this motion is the meaning of the word "removably" as it is used in describing the Allure hamper's supporting rods and how those rods function. The term "removably" is used as follows in the disputed claims: (1) "removably secured" (claims 1, 6, 7, and 17); (2) "removably securing" (claims 6, 7, and 17); and (3) "removably fitting" (claim 14). As noted, four of the five claims use the term "removably" twice within the claim.

LaMont contends that the term is clear and unambiguous and, consistent with other language in the patents, the term refers to rods that are completely detachable from the hamper. Although neither party suggests that the inventor attributed any special meaning to the term "removably secured" or "removably fitting," Allure argues that the term is ambiguous and that therefore extrinsic evidence should be considered.

Allure contends that interpreting "removably" to mean detachable or completely removable from the hamper is not consistent with the inventor's intent and understanding of his invention. (Pl. Opp. at 8). In addition, Allure maintains that the term "removably" refers to "the ability to remove the supporting rods from their cavities, thereby removing the secured rods from their vertical position, rendering a fully collapsible hamper." (*Id.*). Allure argues that the plain dictionary meaning of the word "removable" means "capable of changing location" and thus supports its claim that "removably" does not mean what LaMont claims it does. (*See* Pl. Letter dated 5/29/98 & Ex. B to Letter).

█ After carefully considering plaintiff's arguments, I hold that the term "removably" as it repeatedly appears in the contested claims is unambiguous. Moreover, to the extent the term is arguably ambiguous, other intrinsic evidence in the patents dispels any doubt. As used in the claims in issue, "removably" means detachable, *i.e.*, detachable from the hamper. I reach this conclusion for four reasons.

First, "removably" plainly means detachable. If the inventor had intended to claim a device that used rods that were movable but permanently attached on one end, he would have used words like "hingeably attached," "movably attached," "removable at one end," or words of similar import. The inventor did not describe the rods in such a manner. Not only did the inventor fail to say that the rods could or should be attached to the apparatus, he consistently and repeatedly chose to describe the rods with the term "removably."

Second, other language in the claims at issue demonstrates that "removably" means detachable. The claims describe side walls or other hamper components that are "secured" to the apparatus as well as a lid that is "hingeably" or "movably" fixed to it. (*See* Pl. Opp. Exs. 5 & 6, claim 6 (lid "hingably [sic] fixed"); claim 17 (lid "moveably [sic] fixed"); claim 1 ("secured" top and bottom); claim 7 (hamper components that are "secured"); and claim 14 (hamper "assembled" and hamper "not assembled", rods that "matingly" and "removably" fit into certain cavities—meaning they can be fitted in and pulled out)). This language speaks for itself.

Third, the figures included in both patents show that the rods are completely removed and placed underneath the hamper when the hamper is in its collapsed state.

Finally, other language in the patents outside the disputed claims demonstrates that "removably" means detachable. For instance, the abstracts of both patents describe a hamper that has "removably secured" supporting rods that "define a three dimensional internal storage space ... that is attractive to the eye when said hamper is assembled for use and which can be easily *disassembled* and collapsed for convenient storage."

Accordingly, I find as a matter of law that the term "removably" as it is used in each of the five disputed claims means detachable from the apparatus and not simply "capable of changing location" as Allure urges.

### 2. *Comparison of Claims to Accused Device*

#### a. *Literal Infringement*

■ To prove literal infringement, Allure must demonstrate that the accused device includes each and every element or limitation of the claims in question. If LaMont's hamper does not have every single element or limitation recited in Allure's claims, it does not literally infringe those claims. *See generally Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed.Cir.1995).

■ Because I find that "removably secured" means secured but detachable, and because the rods in the Z3 hamper, unlike the Allure hamper rods, are not "removably secured," the Z3 hamper does not literally infringe either patent. Rather, the rods in the Z3 hamper are fixed to the upper frame of the hamper and fold so that the hamper can be collapsed. A removably secured rod is not the same thing as a rod that is attached, that always remains attached, and that bends through the use of a hinge.

#### b. *Infringement Under the Doctrine of Equivalents*

■ A device that does not literally infringe a claim may nonetheless infringe under what is called the "doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed.Cir.1997) (citation omitted); *see also Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997). An accused device may infringe a claim under the doctrine of equivalents if it "performs substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result as the claimed invention." *See Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed.Cir.1994) (citations omitted). The doctrine of equivalents, however, cannot extend or enlarge the scope of patent claims; rather, the patent claims remain the same and the doctrine "is not a license to ignore claim limitations." *Id.* at 398 (citation omitted).

■ To prove infringement under the doctrine of equivalents, Allure must show that even though LaMont's hamper does not contain removable rods to support the ham-

per's structure, the rods used by LaMont perform substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result as the rods in Allure's claimed invention. I hold that Allure cannot meet its burden and that no reasonable jury could conclude otherwise. The difference between the accused hamper and the claimed invention is substantial. Even though LaMont's hamper arguably performs the same overall function and produces the same overall result, it does not perform that function or achieve that result in substantially the same way as does Allure's hamper.

Allure's hamper contains rods that are inserted into cavities from which they can be removed "matingly." Allure's hamper is disassembled by removing those rods completely from the hamper's structure and placing them underneath the collapsed hamper. LaMont's hamper operates in a substantially different manner. The LaMont hamper is not disassembled by completely removing the rods from the cavities. The LaMont hamper is collapsible because its rods are cut and hinged in such a way that they can be folded. The rods, though, are fixed to the structure of the hamper. Because they are not "removably secured," there is no equivalency between these two models.

The doctrine of equivalents should not be not allowed such "broad play as to eliminate [a claim] element in its entirety." *Warner–Jenkinson*, 117 S.Ct. at 1049. To construe Allure's hamper in the way in which Allure urges would do precisely that because the removable nature of the rods is a defining feature of the claims at issue.

## *CONCLUSION*

For the reasons stated herein, defendants' motion for summary judgment is granted. Because defendants' collapsible hamper neither literally infringes plaintiff's hamper nor infringes under the doctrine of equivalents, plaintiff's complaint is hereby dismissed with prejudice and with costs. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

## FIG. I

Opinion Exhibit 1

# FIG.2

Opinion Exhibit 2

 

Opinion Exhibit 3

June 15, 1998.