### NEW YORK & R. CEMENT CO. *v.* COPLAY CEMENT CO.

*(Circuit Court, E. D. Pennsylvania.   October 9, 1890.)*

**TRADE-MARKS—INFRINGEMENT—INJUNCTION.**
    A suit to restrain the use of the name "Rosendale Cement" in the denomination of cement manufactured and sold by defendants, cannot be maintained, though such name is known by the public to mean cement made in Rosendale, and defendants' manufactory is in another state, unless it be shown that complainants have an exclusive ownership or property therein. It is not sufficient that they, in common with certain other persons, have a right to use it, and the public may be deceived by defendants' use of the name.

In Equity.

The defendants manufactured and sold cement, which they denominated and put upon the market as "Anchor Rosendale Cement," though made in Lehigh county, Pa., from stone quarried there. The complainants manufacture cement in the town of Rosendale, in the state of New York, where there are extensive quarries of cement rock, which are worked by some 15 or 20 different parties. Some of these Rosendale quarries have been worked for over half a century, but the

complainants commenced their operations about 1874. The cement made in Rosendale and its vicinity has always been called "Rosendale Cement," and the complainants contend that the term has acquired a generic signification, applicable to the hydraulic cement manufactured at Rosendale and its vicinity, and inhering in the marketable quality of the cements manufactured by the complainants and others. The bill was filed for the purpose of enjoining the defendants from using the word "Rosendale" in describing their cement, and to obtain damages and an account of profits for such use.

· *C. H. Mathews* and *Rowland Cox*, for complainants.

*P. K. Erdman* and *Chas. Howson*, for defendants.

BRADLEY, Justice, (*after stating the facts as above.*) The relief sought is based on the charge that the denomination used is untrue, is calculated to deceive the public, and operates as an unfair and fraudulent competition against the business of the complainants. They do not pretend that they have any exclusive right to the use of the term "Rosendale," since it is equally used by the other manufacturers of cement in the town, some of whom have establishments of much longer standing than that of the complainants; but they insist that they have a right to use it, and to participate in the advantages which are attached to it as enhancing the marketable value of their cement. The defendants contend that the name "Rosendale Cement" has ceased to have a mere local significance or application, and has come to be a generic term, used to designate the common grade or class of cements otherwise known as American natural cements, to distinguish them from a higher grade or class of cements known as "Portland Cement;" this general class of cement being by force of accident called "Rosendale Cement" because it was first made in Rosendale.

Much evidence has been taken by the parties on this controverted question; but the view of the case which we have taken obviates the necessity of examining this evidence. Though it be conceded that the name "Rosendale Cement" is understood by the public as designating the place where it is made and comes from, and that the defendants untruly call their cement by that name, the question still remains whether they can be prosecuted therefor, at the suit of a private party, who is only one of the many who manufacture cement at Rosendale, and truly denominate their cement "Rosendale Cement." Would not the allowance of such an action be carrying the doctrine of liability for unfair competition in business too far? The counsel for the complainants frankly concedes that the principle for which he contends would enable any crockery merchant of Dresden or elsewhere, interested in the particular trade, to sue a dealer of New York or Philadelphia who should sell an article as Dresden china when it is not Dresden china. It seems to us that this would open a Pandora's box of vexatious litigation. A drygoods merchant, selling an article of linen as Irish linen, could be sued by all the haberdashers of Ireland, and all the linen dealers of the United States. No doubt the sale of spurious goods, or holding them out to be different from what they are, is a great evil, and an immoral,

if not an illegal, act; but unless there is an invasion of some trade-mark, or trade-name, or peculiarity of style, in which some person has a right of property, the only persons legally entitled to judicial redress would seem to be those who are imposed upon by such pretenses. The public, of course, is deeply interested in their suppression, and if the laws are deficient, the legislature might very justly intervene to prevent impositions of this kind by public prosecution of the offenders; but to give a civil action to every honest dealer against every dishonest one engaged in the same trade would vex the courts and the country with an access of multitudinous litigation. The law furnishes us with an instructive analogy on this subject. No man can maintain a private action for a public nuisance, though he is injured by it, unless his injury is of a special character, different from that which is sustained by the public generally. This is a sound rule of the common law. It is intended to prevent vexatious litigation. When an injury is a public one it should be prosecuted as a public wrong. So here the wrong, if there is one, is committed against the public. If it be said that the cement manufacturers of Rosendale are specially injured, because their trade is affected, it may be properly answered that they are all injured alike. It is a public injury as to them, just as it would be to all the dealers in linen for a man to sell as Irish linen fabrics that are not such. It is a damage to the complainants and the other cement manufacturers of Rosendale for the defendants to sell their cement as Rosendale cement, but, like many other cases of damage, in our judgment, it is of that kind which the law calls *damnum absque injuria*. The defendants may lay themselves open to prosecution by their customers, or possibly by the state, if they are guilty of falsely selling their cement as of a class or sort to which it does not belong, but that is no reason for sustaining an action against them at the suit of those who deal in such cement. In our view, if a person seeks to restrain others from using a particular trade-mark, trade-name, or style of goods, he must show that he has an exclusive ownership or property therein. To show that he has a mere right, in common with others, to use it, is insufficient.

We may add to the considerations already suggested, that it is difficult to see how any just basis can be laid for an account of profits between the complainants and the defendants that would not equally apply to the 15 or 20 other manufacturers of cement at Rosendale, who, if this suit is sustained, might, with equal justice, prosecute for the same profits. These incidental suggestions, however, are apart from the main argument, which, of itself, seems conclusive of the case.

We have not thought it necessary to review the cases that have been cited and commented on by counsel. The question is nearly a new one, and we do not find ourselves confronted by any line of authorities which ought to control our own judgment and view of the matter. We have relied upon the general principles of the law which seem to be the most applicable to the case. The bill must be dismissed.

McKENNAN, Circuit Judge, concurs.