## ELY–NORRIS SAFE CO. v. MOSLER SAFE CO.*

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 264.

1. **Trade-marks and trade-names and unfair competition ☞77—Competitor must not use deceit in taking away customers of another.**

Competitor's deceit in taking away customers of another is actionable.

2. **Trade-marks and trade-names and unfair competition ☞77 — Defendant's false representation that safes contained explosion chamber held unfair competition, and actionable.**

Where plaintiff manufactured and sold safes under letters patent, with an explosion chamber designed for protection against burglars, acts of defendant in manufacturing and selling safes without a chamber, but with a metal band around the door in the same place that plaintiff put the chamber, and falsely telling customers that such band was employed to cover and close an explosion chamber, *held* to constitute unfair competition, and, if resulting in loss of sales to plaintiff, actionable.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Ely-Norris Safe Company against the Mosler Safe Company. From decree of dismissal, plaintiff appeals. Reversed.

The jurisdiction of the District Court depended upon diverse citizenship, and the suit was for unfair competition. The bill alleged that the plaintiff manufactured and sold safes under certain letters patent, which had as their distinctive feature an explosion chamber, designed for protection against burglars. Before the acts complained of, no one but the plaintiff had ever made or sold safes with such chambers, and, except for the defendant's infringement, the plaintiff has remained the only manufacturer and seller of such safes. By reason of the plaintiff's efforts the public has come to recognize the

·Certiorari granted 45 S. Ct. 515, 69 L. Ed. ——.

value of the explosion chamber and to wish to purchase safes containing them. Besides infringing the patent, the defendant has manufactured and sold safes without a chamber, but with a metal band around the door, in the same place where the plaintiff put the chamber, and has falsely told its customers that this band was employed to cover and close an explosion chamber. Customers have been thus led to buy safes upon the faith of the representation, who in fact wished to buy safes with explosion chambers, and would have done so, but for the deceit.

The bill prayed an injunction against selling safes with such metal bands, and against representing that any of its safes contained an explosion chamber. From the plaintiff's answers to interrogatories it appeared that all the defendant's safes bore the defendant's name and address, and were sold as its own. Furthermore, that the defendant never gave a customer reason to suppose that any safe sold by it was made by the plaintiff.

Mayer, Warfield & Watson, of New York City (Julius M. Mayer, F. P. Warfield, and Lawrence Bristol, all of New York City, of counsel), for appellant.

Samuel Owen Edmonds, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). This case is not the same as that before Mr. Justice Bradley in New York & Rosendale Co. v. Coplay Cement Co. (C. C.) 44 F. 277, 10 L. R. A. 833. The plaintiffs there manufactured cement at Rosendale, N. Y., but it did not appear that they were the only persons making cement at that place. There was no reason, therefore, to assume that a customer of the defendant, deceived as to the place of origin of the defendant's cement, and desiring to buy only such cement, would have bought of the plaintiffs. It resulted that the plaintiffs did not show any necessary loss of trade through the defendant's fraud upon its own customers. We agree that some of the language of the opinion goes further, but it was not necessary for the disposition of the case.

American Washboard Co. v. Saginaw Mfg. Co., 103 F. 281 (C. C. A. 6), 43 C. C. A. 233, 50 L. R. A. 609, was, however, a case in substance like that at bar, because there the plaintiff alleged that it had acquired the entire output of sheet aluminum suitable for washboards. It necessarily fol-

lowed that the plaintiff had a practical monopoly of this metal for the articles in question, and from this it was a fair inference that any customer of the defendant, who was deceived into buying as an aluminum washboard one which was not such, was a presumptive customer of the plaintiff, who had therefore lost a bargain. This was held, however, not to constitute a private wrong, and so the bill was dismissed.

Furthermore, we do not agree with the plaintiff that cases like Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729, and our decision in Royal Baking Powder Co. v. Federal Trade Commission, 281 F. 744, are in his favor. These arose under the Federal Trade Commission Act (Comp. St. §§ 8836a–8836k) where it is only necessary to show that the public interest has been affected. The defendant's customers in such cases had an undoubted grievance, and this was thought to be enough to justify the intervention of the Federal Trade Commission. It by no means follows from such decisions that a competing manufacturer has any cause of suit.

[1, 2] We must concede, therefore, that on the cases as they stand the law is with the defendant, and the especially high authority of the court which decided American Washboard Co. v. Saginaw Mfg. Co., supra, makes us hesitate to differ from their conclusion. Yet there is no part of the law which is more plastic than unfair competition, and what was not reckoned an actionable wrong 25 years ago may have become such today. We find it impossible to deny the strength of the plaintiff's case on the allegations of its bill. As we view it, the question is, as it always is in such cases, one of fact. While a competitor may, generally speaking, take away all the customers of another that he can, there are means which he must not use. One of these is deceit. The false use of another's name as maker or source of his own goods is deceit, of which the false use of geographical or descriptive terms is only one example. But we conceive that in the end the questions which arise are always two: Has the plaintiff in fact lost customers? And has he lost them by means which the law forbids? The false use of the plaintiff's name is only an instance in which each element is clearly shown.

In the case at bar the means are as plainly unlawful as in the usual case of palming off. It is as unlawful to lie about the quality of one's wares as about their maker; it equally subjects the seller to action by the buyer. Indeed, as to this the case of Federal Trade Commission v. Winsted Hosiery Co., supra, is flatly in point, if authority be needed. The reason, as we think, why such deceits have not been regarded as actionable by a competitor, depends only upon his inability to show any injury for which there is a known remedy. In an open market it is generally impossible to prove that a customer, whom the defendant has secured by falsely describing his goods, would have bought of the plaintiff, if the defendant had been truthful. Without that, the plaintiff, though aggrieved in company with other honest traders, cannot show any ascertainable loss. He may not recover at law, and the equitable remedy is concurrent. The law does not allow him to sue as a vicarious avenger of the defendant's customers.

But, if it be true that the plaintiff has a monopoly of the kind of wares concerned, and if to secure a customer the defendant must represent his own as of that kind, it is a fair inference that the customer wants those and those only. Had he not supposed that the defendant could supply him, presumably he would have gone to the plaintiff, who alone could. At least, if the plaintiff can prove that in fact he would, he shows a direct loss, measured by his profits on the putative sale. If a tradesman falsely foists on a customer a substitute for what the plaintiff alone can supply, it can scarcely be that the plaintiff is without remedy, if he can show that the customer would certainly have come to him, had the truth been told.

Yet that is in substance the situation which this bill presents. It says that the plaintiff alone could lawfully make such safes, and that the defendant has sold others to customers who asked for the patented kind. It can make no difference that the defendant sold them as its own. The sale by hypothesis depended upon the structure of the safes, not on their maker. To be satisfied, the customer must in fact have gone to the plaintiff, or the defendant must have infringed. Had he infringed, the plaintiff could have recovered his profit on the sale; had the customer gone to him, he would have made that profit. Any possibilities that the customers might not have gone to the plaintiff, had they been told the truth, are foreclosed by the allegation that the plaintiff in fact lost the sales. It seems to us merely a corollary of Federal Trade Commission v. Winsted Hosiery Co., supra, that, if this can be proved, a private suit will lie.

Decree reversed.