**SPOTLESS ENTERPRISES, INC. and Spotless Plastics Pty. Ltd., Plaintiffs–counterdefendants,**

v.

**CARLISLE PLASTICS, INC., Defendant–Counterplaintiff.**

No. CIV.A.97–CV–0427(DGT).

United States District Court, E.D. New York.

July 12, 1999.

Kenneth King, Patricia Anne Wilczynski, Allen R. Morganstern, Scully, Scott, Murphy & Presser, Garden City, N.Y., for plaintiff.

Lewis H. Eslinger, Garden City, N.Y., for plaintiff.

Ira E. Silfin, Kenneth P. George, Amster, Rothstein & Eberstein, New York, NY, for defendant.

### MEMORANDUM AND ORDER

TRAGER, District Judge.

As one of many claims and counterclaims between the parties to this action and their various associates and predecessors in interest, Carlisle Plastics, Inc. ("Carlisle"), in its fifth counterclaim against Spotless Enterprises, Inc. and Spotless Plastics Pty. Ltd. ("Spotless"), asserted an unfair competition and false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), based on Spotless' false allegations of Carlisle's patent infringement. Spotless then moved for summary judgement on that counter-

claim. The parties have agreed, however, that, at this point, the motion is best treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Taken in that posture alone, the motion to dismiss is denied.

### Background

Both Spotless and Carlisle manufacture clothes hangers which are sold to retailers or to clothes vendors who then deliver the clothes, already on the hanger, to retailers like Sears, WalMart, Target, and Hills Stores; it is the retailers who make the decision as to what kind of hanger is best for their stores. *See* Ans., Affirmative Def. and Countercl. at ¶ 91 (herein "Countercl."). The hangers are constructed in such a way, and equipped with such attachments, that information about a particular garment, for instance, size, price, or variety, can be viewed by a consumer who scans a clothes rack looking for a particular type or size of an item.

Carlisle came into direct competition with Spotless when, in 1993, Carlisle began manufacturing hangers which resembled the patented Spotless hangers already dominant in the market in that the identifying information was positioned on the top, rather than the side, of the hangers. At that time, Carlisle sent to Spotless a sample of the new design and information explaining why its hanger did not infringe on Spotless' patented hanger design. Spotless disagreed with this assessment. Moreover, allegedly fearing they might be charged with infringing Spotless' patent, retailers such as Target Stores, and later Hills Stores, rejected Carlisle's hangers. *See Carlisle Plastics, Inc. v. Spotless Enterprises, Inc.,* 984 F.Supp. 646, 648 (E.D.N.Y.1997); Countercl. at ¶¶ 96, 99; Def. Mem. in Opp. to Pl. Motion for Sum. J. in Regard to Defendant's Fifth Countercl. (herein "Def. Mem.") at 6. In 1994, Carlisle brought a declaratory judgment action for invalidity and non-infringement of Spotless' patent. After a reexamination

by the Patent and Trademark Office, Spotless countersued, in 1997, for patent infringement and unfair competition based on merchandise not included in the 1994 suit. The suits were consolidated into a 1997 action which included, *inter alia*, a counterclaim by Carlisle alleging unfair competition and false advertising under § 43(a) of the Lanham Act. After a bench trial which addressed the questions of the validity and infringement of Spotless' patent by Carlisle, Spotless' patent was found to be valid but not infringed either literally or under the doctrine of equivalents. *See Carlisle Plastics*, 984 F.Supp. at 658 (E.D.N.Y.1997). That ruling has been upheld by the Court of Appeals for the Federal circuit. *See Carlisle Plastics, Inc. v. Spotless Enterprises, Inc.*, 178 F.3d 1313, 1999 WL 37413 (Fed.Cir.1999).

Although not relevant for the purposes of a motion to dismiss, certain evidence which was submitted pursuant to the original motion for summary judgment demonstrates the types of conduct on which Carlisle bases its Lanham Act counterclaim. For instance, Carlisle has presented evidence that, in trying to promote sales of its own hangers, Spotless' Executive Vice President, Stanley Gouldson, "probably" told Mark Swanson of Target Stores that Carlisle's hangers infringed Spotless' patent. *See* Dep. of Stanley Frederick Matthew Gouldson at 79, Decl. of Ira Silfin, Ex. 13. To conclude that Target's subsequent refusal to order hangers from Carlisle was a result of Gouldson's representations (if made) would certainly be premature at this point. But it

seems that Carlisle will be attempting to prove just such a connection. More likely to be convincing, perhaps, is Carlisle's evidence that Hills Stores, having been informed of the alleged infringement, chose not to do business with Carlisle, despite an ongoing relationship, and turned to Spotless instead. *See* Letter of Howard Samuels, VP for Business Development—A & E products, dated 1/23/98, Decl. of Patricia A. Wilczynski, Ex. 3; Def. Mem. at 6.

## Discussion

Carlisle's fifth counterclaim is brought under § 43(a) of the Lanham Act in its role as a federal law of unfair competition.[1] More specifically, because it is based on Spotless' alleged representations to Carlisle's customers and potential customers, it seems best characterized as a § 43(a) false advertising claim. Carlisle alleges: that Spotless "advised retailers or garment manufacturers that they [Spotless] own and are the licensee of patents which cover [the disputed] hangers [and] ... that [Carlisle's products] ... would infringe one or more of their patents," Countercl. at ¶¶ 93, 95; that Carlisle was "asked by retailers to provide indemnification against patent infringement to the retailers," *id.* at ¶ 96; that the acts "were [carried] out in interstate commerce during the course of [Spotless'] sales and marketing efforts to promote the sale of their products," *id.* at ¶ 97; that Carlisle suffered damages as a result of Spotless' actions, *id.* at ¶ 99; and, finally, that Spotless' statements were false. *Id.* at ¶ 100.

---

**1.** Section 43(a) of the Lanham Act states in relevant part:

  **(a) Civil action**

    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such per-

son with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

  (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Spotless has responded that, because the damages alleged in this counterclaim are the result of Spotless' legitimate and good faith defense of its patent, federal patent law immunizes Spotless from liability. In effect, the argument is that federal patent law "trumps" other federal laws, in this case the Lanham Act. Spotless further asserts that even were its representations found to have been made in bad faith,[2] i.e., without a reasonable basis to believe that Carlisle was infringing Spotless' patent, liability would still not lie under the Lanham Act because that Act does not address patent claims. In contrast to the previous argument, this contention is based on a limited view of the scope of the Lanham Act rather than an expansive view of the power of federal patent law. However, I conclude that the Lanham Act covers the conduct at issue and that federal patent law will not immunize Spotless from recovery even if Carlisle fails to establish bad faith.

### (1)

### The Scope of the Lanham Act

The Federal Circuit has recently held that it will apply its own law to the question whether or not "patent law conflicts with other federal statutes or preempts state law causes of action." *See Midwest Ind., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1999 WL 270387, at *1 (Fed.Cir. May 5, 1999). The Federal Circuit has repeatedly acknowledged, however, that, aside from cases in which there is a conflict with patent law, claims of unfair competition are governed by the law of the regional circuit in which the district court sits. *See, e.g., Pro–Mold and Tool Co.,*

*Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed.Cir.1996). Thus, the law of the Second Circuit governs Spotless' contention that even if the conflict with patent law were put aside, the Lanham Act would not provide a remedy for false claims of infringement.

In order to establish a prima facie case for damages as a result of unfair competition/false advertising under the Lanham Act, Carlisle must allege that Spotless: (1) made false representations, (2) for goods, (3) in interstate commerce, (4) in commercial advertising or promotion, (5) about a material[3] facet of Carlisle's product, (6) that caused damage to Carlisle. *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, False Advertising, § 27:24 (1998); 15 U.S.C. § 1125(a)(1). Importantly, although intent is relevant on the issue of damages, intent to deceive or bad faith is not a necessary element of a Lanham Act claim. *See Procter & Gamble Co. v. Cheesebrough–Pond's, Inc.*, 747 F.2d 114, 119 (2d Cir.1984) ("proof of good faith does not immunize a defendant" from Lanham Act false advertising charge); *Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir.1980) (intent to deceive is not an element of false representation); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir.1958); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 174 (C.D.Ill.1992) (Lanham Act claim based on false representations of patent infringement did not require allegation of bad faith); *Grupke v. Linda Lori Sportswear, Inc.*, 921 F.Supp.

**2.** Spotless contends that Carlisle has failed to allege bad faith. However, while it is not clear that it is addressed directly to the Lanham Act claim, Carlisle's allegation that Spotless "willfully made false or misleading statements," Countercl. at ¶ 100, fulfills the federal patent law requirement that false statements be made in bad faith in order to create causes of action. See discussion *infra* at (3).

**3.** Although the Court of Appeals for the Second Circuit originally required that false rep-

resentations relate to "an 'inherent quality or characteristic' of the product" in order to establish a false advertising claim, the Court of Appeals has since interpreted that requirement to be one of "materiality." *National Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir.1997). In other words, the only requirement is that the misrepresentation have been one which would affect a purchasing decision. *See id.* (citing cases).

987, 994 (E.D.N.Y.1996) (citing *Johnson & Johnson* for same); *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517, 529–30 (S.D.N.Y.1980) (false advertising claim under Lanham Act requires no intent to deceive). The Lanham Act has created a regime of strict liability with regard to false advertising claims.

■ In this case, absent the patent law issues, there would seem to be no question that Carlisle's complaint alleges grounds for a claim under the Lanham Act (although possibly with only limited recovery). There is no dispute that the goods at issue traveled in interstate commerce. Spotless' claim that Carlisle's hangers infringed their patent has subsequently been held to be false. And it is certainly possible that Spotless' representations did harm Carlisle's sales; thus, both the prongs of causation and materiality are satisfied by this allegation. Finally, Carlisle's allegation that Spotless' claims were made during Spotless' "sales and marketing efforts to promote the sale of their products," Countercl. at ¶ 97, is an effective allegation that Carlisle's claims were made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1).

Indeed, the fact pattern in the present case seems to resemble a standard Lanham Act cause of action—the so-called "false comparative advertising" case. For example, in *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57 (2d Cir.1992), the Court of Appeals for the Second Circuit affirmed a district court's issuance of a preliminary injunction under the Lanham Act which enjoined the continued broadcast of a television commercial which allegedly falsely asserted that tests showed that Quaker State automobile oil protected engines better "at start-up" than "any other leading [ ] motor oil." *Id.* at 59. The Second Circuit ruled that, as the district court had found that the tests to which Quaker re-

ferred did not, in fact, support its claim, but rather contradicted its claim, the broad injunction was valid.

Similarly, in *McNeilab, Inc. v. American Home Products Corp.*, 675 F.Supp. 819 (S.D.N.Y.1987), the manufacturers of Tylenol sought and received an injunction pursuant to § 43(a) of the Lanham Act against the manufacturers of Advil. The manufacturers of Advil were enjoined from publishing advertisements which claimed that Advil was as mild on the stomach as Tylenol, because it had already been found in a prior judgment that Advil was not, in fact, as mild as Tylenol, and evidence showed that the statement at issue was probably misleading to consumers.

As in both of the above cases, Carlisle alleges that Spotless has made false statements which tended to mislead the target audience, in this case, retailers, as to the comparative quality of the goods produced by the manufacturers. Here, however, Spotless' claim of superior quality is related to the legality of its product under patent law. While this action is for damages and not for injunctive relief, the effective difference between the two claims is only that the former requires proof of causation while the latter requires only that the claimant show a likelihood of harm. As already noted, Carlisle has sufficiently alleged causation to survive the motion to dismiss. It seems clear that, if made, Spotless' false claims and implications that Carlisle's hangers infringe Spotless' patent and, thus, may subject purchasers to suit, or other problems,[4] are as harmful to fair competition and as material to a decision to purchase as claims that Advil is as mild on the stomach as Tylenol, or that Quaker Oil protects a car better than other oils. Therefore, but for the patent aspect of the case, one would expect Spotless' statements to create the same

4. Although not relevant to the motion at hand, it may be noted that some evidence suggests that purchasers were not worried about being sued for infringement, but rather about the possibility that Carlisle would have supply problems stemming from the Spotless/Carlisle dispute.

liability as did the statements of the defendants in *Castrol* and *McNeilab.*

A number of courts have applied the Lanham Act to patent cases such as the one at hand without even a discussion of foreclosure by federal patent law. For example, the Western District of New York did so in *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.,* 964 F.Supp. 90 (W.D.N.Y.1997). The *Laser Diode* decision begins with the words "[t]his is a patent infringement case." *Id.* at 91. The case was based on a failed relationship between two manufacturers that degenerated into charges by Laser Diode Array, Inc. ("LDAI") that Paradigm Lasers, Inc. ("Paradigm") was infringing their patents. The relevant portion of the case dealt with Paradigm's counterclaim under the Lanham Act. Paradigm alleged that LDAI was claiming within the industry that one of Paradigm's products infringed on LDAI's patents and that LDAI had contacted at least one customer and induced that customer not to purchase Paradigm's product because it violated LDAI's patent. *See id.* at 94. In holding that these allegations constituted a viable claim under the Lanham Act, the district court quoted the Second Circuit: "Although early judicial interpretations of this section restricted its applicability, section 43(a) subsequently has been employed successfully to combat a wide variety of deceptive commercial practices." *Id.* at 95, *quoting PPX Enterprises v. Audiofidelity Enterprises,* 818 F.2d 266 (2d Cir.1987). The district court went on to cite cases from other circuits in which district courts had ruled that allegations of false representations of infringement had served as grounds for viable Lanham Act claims. *See id.* at 95–96 (citing *Laitram Machinery, Inc. v. Carnitech A/S,* 901 F.Supp. 1155, 1162 (E.D.La.1995); *Larami Corp. v. Amron,* 36 U.S.P.Q.2d 1073, 1084 (E.D.Pa.1995); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,* 827 F.Supp. 957, 964–65 (S.D.N.Y.1993); *Repap Enterprises Inc. v. Kamyr Inc.,* 27 U.S.P.Q.2d 1685, 1690, 1993 WL 322881 (E.D.Pa.1993); and *Brandt Consolidated,*

*Inc. v. Agrimar Corp.,* 801 F.Supp. 164, 170 (C.D.Ill.1992)).

*Brandt* is squarely on point. There, the district court, addressing facts similar to those at bar, awarded summary judgment on the issue of liability under § 43(a) of the Lanham Act. Brandt Consolidated, Inc. ("Brandt"), a manufacturer of fertilizer mixtures, had purchased certain chemicals from Agrimar Corp. ("Agrimar") over an extended period of time. When the relationship ended, Brandt continued to manufacture and sell a chemical compound allegedly similar or identical to the one made by Agrimar. Agrimar, alleging it had a valid patent for a key ingredient in the compound, sued Brandt for patent infringement in the Middle District of Florida, Tampa division, and sent letters alleging infringement to one of Brandt's customers. Brandt brought a claim in the United States District Court for the Central District of Illinois for, *inter alia,* declaratory relief on the patent infringement claim and for damages under the Lanham Act resulting from the false representations of infringement.

In response to a motion to dismiss the Lanham Act claim for failure to state a claim on which relief might be granted, the Illinois district court ruled that Brandt's claim was viable. *See id.* at 174. Furthermore, in response to Brandt's motion for summary judgment on the claim, the district court held that Agrimar had violated the Lanham Act through its false claim of infringement. (The court was unable, however, to grant summary judgment on damages based on the evidence presented.) While entirely ignoring any potential conflict between the Lanham Act and federal patent law, the district court was very clear in its understanding of the scope of the Lanham Act:

> The Lanham Act is designed to, among other things, protect competitors from misrepresentations which a defendant makes about its own or another's products and which relate to the principal

bases of competition among sellers.... The threat of a patent infringement action [ ] caused [the purchaser] to offer to halt its sales of Brandt's products. Under these facts, the threat to plaintiff's sales posed by Defendants' claims of patent exclusivity raises a viable Lanham Act claim.

*Id.* at 174.

In rebuttal to these cases, Spotless relies on *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.,* 402 F.Supp. 838 (E.D.N.Y. 1975), *aff'd,* 538 F.2d 314 (2d Cir.1976) (unpublished table decision), to support the proposition that the Lanham Act does not reach false claims of patent infringement. *Tubeco,* however, does not bolster Spotless' argument. *Tubeco* did not involve a defendant who had alleged that the plaintiff was infringing on his patent. To the contrary, both parties agreed that the process used by plaintiff, Tubeco, Inc. ("Tubeco"), to bend pipe did not infringe on the process patented by defendant, Crippen Pipe Manufacturing ("Crippen"). Instead, Tubeco contended that the Lanham Act violation lay in Crippen's false allegation of a patent on the process, or in Crippen's creation "of an impression in the trade that Crippen is now the exclusive source or origin of hot pipe bending services previously supplied by Tubeco." *Id.* at 847. The district court stated that Crippen's

patent was presumptively valid, and that no such impression had been created by Crippen's materials.

The district court then went on to explain that the Lanham Act is "directed only against the 'false representation of goods or services in interstate commerce.'" *Id.* at 847 (citations omitted). Because Crippen's representations had related only to a process, and not to a "good or service[ ] in interstate commerce," the district court held that the Lanham Act did not apply. Taken in this context, the district court's comment that "to paraphrase Judge Friendly's comment in an analogous situation, 'section 43(a) is intended to reach false advertising violations,' not false patent claims," is not relevant to, much less binding on, this case.[5] *Id.* citing *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.;* 495 F.2d 1265, 1270 n. 6 (2d Cir.1974).

Furthermore, any precedential value *Tubeco* might have[6] is further eroded by the fact that *Tubeco* is now nearly 25 years old. In this connection, one ought to consider the comment by Learned Hand that "there is no part of the law which is more plastic than unfair competition, and what was not reckoned an actionable wrong 25 years ago may have become such today." *Ely–Norris Safe Co. v. Mosler Safe Co.,* 7 F.2d 603, 604 (2d Cir.1925), *rev'd on other*

---

5. The Federal Circuit has cited *Tubeco* in an "unpublished" opinion not citable as precedent for the proposition that "communications to customers and prospective licensees regarding a patent are 'in no sense the false advertising at which the Lanham Act was aimed.'" *Manildra Milling Corp. v. Ogilvie Mills Inc.,* 30 U.S.P.Q.2d 1012, 1019, 1 F.3d 1253, 1993 WL 217173 (Fed.Cir.1993) ("Since we conclude that the record fails to establish conduct on Ogilvie's part that would qualify for liability under the Lanham Act, we need not decide whether the Lanham Act should even come into play in the situation where a patentee is publicizing the presumed validity of its patents and belief in a competitor's infringement thereof."). Interestingly, the only other decision that the Federal Circuit cited as precedent for that proposition also concluded that the Lanham Act did not apply because no goods had entered com-

merce. *See Lang v. Pacific Marine and Supply Co., Inc.,* 703 F.Supp. 1404, 1411 (D.Hawai'i 1989), *aff'd,* 895 F.2d 761, 765 (Fed.Cir.1990) ("Because Lang's complaint did not, and could not until the ship was completed, allege that the ship had entered into commerce, the district court correctly dismissed Count IV for failure to state a claim under the Lanham Act.").

6. It was posited by Spotless' counsel at oral argument that, because *Tubeco* was affirmed by the Second Circuit, it is the law of this circuit that the Lanham Act does not apply to false assertions of patent infringement. Not only is this not the holding of *Tubeco, see supra,* but, because the Second Circuit issued a summary affirmance of the district court's decision, it is impossible to know the basis of the affirmance or apply it as precedent.

*grounds,* 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578 (1927). The Lanham Act's application has been continuously expanded by the courts since its enactment, and that expansion was explicitly ratified by the Congress through its 1988 amendments to the statute. *See PPX Ent., Inc. v. Audiofidelity Ent., Inc.,* 818 F.2d 266, 270 (2d Cir.1987); S.Rep. No. 100–515, at 40 (1988), *reprinted in,* 1988 U.S.C.C.A.N. 5577, 5603. Significantly, the legislative history of the 1988 amendments, as well as the amendments themselves enacted, indicate that § 43(a) was deliberately broadened in its application, and that Congress expected the courts to continue to expand the Act's application, and to continue to utilize the Act to combat false advertising. *See* 15 U.S.C. § 1125(a); S.Rep. No. 100–515, at 40 (1988), *reprinted in,* 1988 U.S.C.C.A.N. 5577, 5603 ("Section 43(a) ... has been applied to cases involving ... actionable false advertising claims.").

Despite this history, Spotless asserts that a more recent Federal Circuit case, *Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568 (Fed. Cir.1996), indicates, like *Tubeco,* that the Lanham Act is not violated by false representations regarding patent infringement.[7] *Pro–Mold* involved a similar, though not identical, set of claims to those in the case at bar, but a distinguishable set of facts. Pro–Mold and Tool Co., Inc. ("Pro–Mold") brought a suit against Great Lakes Plastics, Inc. ("Great Lakes") for patent infringement. Great Lakes then brought a counterclaim against Pro–Mold for unfair competition. The United States District Court for the Northern District of Ohio had held that Pro–Mold's patent was invalid and that Great Lakes' counterclaim for unfair competition was unsupported by evidence. The Federal Circuit vacated and remanded the first ruling and affirmed the

second. The Federal Circuit, however, did not hold that Lanham Act claims could not survive a collision with the patent law.

The particular claim in *Pro–Mold* was that, because Pro–Mold had obtained its patent through inequitable means (there was an allegation that Pro–Mold had failed to disclose a relevant piece of prior art and a joint inventor to the United States Patent and Trademark Office when it obtained its patent), Pro–Mold's suit against Great Lakes for patent infringement constituted unfair competition. *See id.* at 1574. Great Lakes did not make clear whether it was presenting a federal or state claim, but the Federal Circuit addressed the claim as if it were a claim under the Lanham Act and wrote that obtaining a patent through inequitable means did not constitute a claim under that statute. *See id.* at 1575. The Federal Circuit further noted that " 'enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present.' ... Thus, there are adequate remedies to deal with inequitable conduct when it is found. Resort to federal unfair competition law is not one of them." *Id. quoting Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 174, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1965). The Federal Circuit then went on to agree with the district court that there was no evidence of inequitable conduct and, therefore, affirmed the dismissal of the unfair competition claim for lack of evidence.

In the unlikely event that the statement regarding "resort to federal unfair competition law" is not dicta, it appears not to be on point. We are not here dealing with a Lanham Act claim that rests on Spotless' conduct in obtaining the patent—the disposition of such a claim would clearly invoke the operation of the Patent and Trade-

---

**7.** Although *Pro–Mold* appears to establish a limitation on the scope of the Lanham Act, as opposed to a bar established by federal patent law, the Federal Circuit subsequently interpreted its own decision as foreclosing recovery for unfair competition on the basis of

inequitable conduct before the Patent and Trademark Office. *See Midwest,* 175 F.3d 1356, 1357. In any event, for reasons explained in the four succeeding paragraphs in the principal text, *Pro–Mold* is not binding on the case at bar.

mark Office and fall solely within the ambit of federal patent law. Instead, Carlisle's counterclaim rests on Spotless' false assertion that its patent encompassed Carlisle's products. Because it upheld the Pro–Mold patent, the Federal Circuit did not directly address the claim that Pro–Mold's infringement suit constituted unfair competition. Instead, it primarily addressed whether the inequitable conduct in obtaining the patent constituted unfair competition.

Indeed, during its discussion of what law controls, the Federal Circuit recognized that it was limiting its discussion primarily to the issue of the inequitable prosecution of the patent:

> When considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit ... When the issues involve substantive questions within our exclusive jurisdiction, however, we do not defer to the regional circuit.... While unfair competition is not unique to our jurisdiction, a question concerning whether alleged inequitable conduct in the prosecution of a patent application constitutes unfair competition clearly does impact our exclusive jurisdiction. We therefore do not defer to regional circuit law on this issue.

*Id.* at 1574 (citations omitted). Had the Federal Circuit sustained the claim that the patent had been obtained by inequitable means but dismissed the unfair competition claim, its decision would have been **more squarely on point with the question at bar.** Even in that case, however, *Pro–Mold* would not have been dispositive because of its focus on the prosecution of the patent, as opposed to the infringement suit.

Therefore, despite the Federal Circuit's dicta, there has been no conclusive statement that the Federal Circuit would limit the scope of the Lanham Act such that it could not provide a remedy for misrepresentations to the public as opposed to inequitable conduct before the Patent and Trademark Office. Indeed, since 1993, when it stated that the viability of the Lanham Act in patent cases was uncertain, the Federal Circuit does not appear to have addressed the question head on. (The statement appears in an "unpublished" opinion which does not have precedential authority.) *See Manildra Milling Corp. v. Ogilvie Mills Inc.*, 1 F.3d 1253, 1993 WL 217173, 30 U.S.P.Q.2d 1012, 1019 (Fed.Cir.1993).

More importantly, however, as the Federal Circuit noted in *Pro–Mold*, unfair competition is an issue upon which the Federal Circuit would generally defer to the regional circuits, and there is no evidence that the Second Circuit would limit the scope of the Lanham Act to exclude patent issues. To the contrary, the Second Circuit has repeatedly acknowledged that the Lanham Act is an instrumental and far reaching element in the protection of the marketplace. *See PPX Ent.*, 818 F.2d at 270.[8]

### (2)

### Foreclosure of Claims By Federal Patent Law

■ In view of the conclusion that the Lanham Act, considered alone, would support a cause of action, it is necessary to consider whether federal patent law forecloses recovery in situations such as the one at bar. The Court of Appeals for the Federal Circuit has held in numerous decisions that possession of a patent imbues

---

8. It should be noted that in *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 313 (2d Cir.1950), the Court of Appeals for the Second Circuit addressed a state unfair competition claim in relation to a false claim of patent infringement. The Second Circuit wrote that "it is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are." *Id.* However, as this case so predated the acknowledged expansion of the Lanham Act, and as it did not address a Lanham Act claim, this statement cannot be considered binding on this case.

one with the power to protect that patent, including the ability to warn infringers of their infringement.[9] Under the Supremacy Clause, this right clearly preempts any contrary state laws, and, indeed, the Federal Circuit has consistently disallowed state causes of action which would infringe on a patentholder's right to warn others of their infringement. Often, such decisions contain a reference to *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38, 33 S.Ct. 202, 208, 57 L.Ed. 393 (1913), in which the Supreme Court stated: "Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts. Such action, *considered by itself,* cannot be said to be illegal." *Id.* at 37–38, 33 S.Ct. at 208 (emphasis added). In *Virtue,* a case brought under antitrust laws, plaintiffs alleged that defendants had brought patent infringement suits against plaintiffs solely for the purpose of protecting an illegal combination of which they were a part. The Supreme Court ruled that, where a defendant was not a member of an illegal combination, that defendant's notification to infringers and prosecution of infringement claims could not constitute the grounds for finding membership in such a combination. It is significant to the issue here that the Supreme Court specifically noted that the wrongful assertion of such rights might provide grounds for claims such as malicious prosecution, but the mere assertion could not create a cause of action under the Sherman Antitrust Act. *See id.* at 38, 33 S.Ct. at 208.

To the extent that the Court of Appeals for the Federal Circuit has reiterated and expanded this holding—which recognized that while valid patent protection may appear to be monopolistic behavior that behavior is part and parcel of the award of a patent—to support the premise that the *bad faith* assertion of patent rights is the *only* viable ground for an action against the patentholder, it has expanded the *Virtue* language beyond its reasonable or supportable limit. Furthermore, while the Federal Circuit's interpretation of patent law may easily preempt state laws, it cannot so easily foreclose a claim brought under a counterindicative federal statute such as the Lanham Act.

In its strongest statement to date on the subject, the Federal Circuit recently wrote: "[F]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show the patentholder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed.Cir. 1998), *rev'd in part, Midwest Ind., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1999 WL 270387 (Fed.Cir. May 5, 1999).[10]

---

**9.** The Court of Appeals for the Federal Circuit has appellate jurisdiction over cases from every district court in which, as was the case here, federal jurisdiction was derived from 28 U.S.C. § 1338(a), i.e., when the case involves a question of patent law. When a case is appealed to the Court of Appeals for the Federal Circuit, the Court of Appeals applies its own legal precedent for substantive matters which fall within its area of exclusive jurisdiction, such as patent validity and enforceability, but defers to regional law of the circuit from which the case originated on substantive matters outside of its area of exclusive jurisdiction. Thus, Federal Circuit precedent governs patent law issues, while Second Circuit precedent governs issues of unfair competition and false advertising under the Lanham Act. *See, e.g., Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed.Cir.1996).

**10.** In *Hunter Douglas* the Federal Circuit noted that its own precedent held that it should apply regional circuit law to reviewing preemption questions. However, because the regional circuit at issue, the Ninth Circuit, had no special "analytic process for assessment of preemption," the Federal Circuit applied its "plenary authority to the issue at hand" and decided the preemption issue under Federal Circuit precedent. *Hunter Douglas,* 153 F.3d at 1333. *Midwest* explicitly overruled the assertion in *Hunter Douglas* that regional circuit law would control the preemption issue. *Midwest,* 175 F.3d 1356, 1358. However, because the Federal Circuit actually applied Federal Circuit precedent to the preemption issue at hand in *Hunter Douglas,* the substantive rulings in *Hunter Douglas* are unaffected by *Midwest.*

In the *Hunter* case, Hunter Douglas, Inc. ("Hunter Douglas"), a manufacturer of motorized window blinds, brought an action against Harmonic Design, Inc. ("Harmonic Design") which alleged, *inter alia,* that Harmonic Design had violated state unfair competition laws by informing purchasers of window blinds that certain companies, also named as defendants, had exclusive licenses "to sell motorized window shades [ ] covered by the Harmonic patents." *Id.* at 1322. Hunter Douglas alleged that the patents referred to were invalid and unenforceable and that, thus, through the above statement, Harmonic Design had "committed an injurious falsehood," i.e., an actionable tort under state law. *Id.* at 1329.

The Federal Circuit ruled that such a claim arose under federal patent law for the jurisdictional purposes of 28 U.S.C. § 1338(a) because it required ruling on the validity and enforceability of patents, concerns "substantial enough to convey 1338(a) jurisdiction." *Id.* The Federal Circuit further held that federal patent law preempted state unfair competition law only where the two conflicted. The Federal Circuit explicitly acknowledged that federal patent law does not preempt the field of unfair competition law. Indeed, the *Hunter Douglas* decision quoted a number of decisions which have acknowledged that unfair competition laws and patent laws have historically coexisted and concluded that there was no evidence that the Congress intended to enter into the field of unfair competition through the patent laws. Thus, where state unfair competition claims do not create a cause of action barred by federal patent law, those claims remain viable. In *Hunter Douglas,* that meant that, unless Hunter's complaint included an allegation that Harmonic Design's assertions were made in bad faith (an allegation not required under the state law action), the claim would conflict with federal patent law and, thus, be preempted and invalid under the Supremacy Clause of the Constitution. *See id.* at 1335–36.

Therefore, rather than holding that patent law preempts all actions involving patents, the Federal Circuit explicitly held that unfair competition claims create issues beyond the scope of federal patent law, and are only preempted by that law if they create a situation in which state law creates a remedy specifically barred by federal patent law.

The Federal Circuit's *Hunter* decision was followed and highlighted four months later in *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* 165 F.3d 891 (Fed.Cir.1998). There, Mikohn Gaming, Inc. ("Mikohn") brought a state law claim against Acres Gaming, Inc. ("Acres") alleging that Acres had tortiously interfered with Mikohn's business relationships. Mikohn based its allegation on two publications. The first publication was a letter sent "to several of Mikohn's customers and potential customers [which stated]: It appears that the [game] system manufactured and sold by Mikohn Corp. infringes at least some of the claims of the enclosed patent.... Acres Gaming intends to use its patents to stop use of such systems." *Id.* at 893–94. The second publication was a press release which stated that "Mikohn is clearly suffering in the marketplace as a result of the issuance of our patent. Customers naturally hesitate to do business with a company whose products appear to infringe a patent...." *Id.* at 894. Under these circumstances, the *Mikohn* court ruled: "[W]e apply federal patent law and precedent relating to the giving of notice of patent rights.... [F]ederal law requires a showing of bad faith in order to bar such communications." *Id.* at 898. The Federal Circuit then vacated a preliminary injunction which had been granted by the district court ruling that "[t]he record provided shows no more than a negligible likelihood of success in showing bad faith in Acres' giving of notice by letters and publicity release." *Id.* at 898.

These two cases make it abundantly clear that *state unfair competition claims based on a patentholder's good faith publi-*

cation of his patent rights, as Spotless alleges its publications were, cannot be successful. Indeed, *Mikohn* addressed facts very similar to the ones in the case at bar. Furthermore, the Federal Circuit has recently expanded the effect of those holdings in *Midwest Ind., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1999 WL 270387 (Fed.Cir.1999). There, the Federal Circuit ruled that it will apply federal patent law and precedent "in determining whether patent law conflicts *with other federal statutes* or preempts state law causes of action." *Id.* at 1357 (emphasis added). In a later discussion of Federal Circuit precedent, the Federal Circuit stated that earlier cases had held that "our law applies to a cause of action over which we do not have exclusive jurisdiction if the question before us is whether [a] cause of action, as applied in a particular case, is foreclosed by patent law." *Id.* at 1360 (discussing *Pro–Mold, supra*). The Federal Circuit specifically stated that such precedent would support its "applying Federal Circuit law to the [ ] question whether patent law forecloses Midwest's claims under federal and state trademark law." *Id.* Thus, the Federal Circuit has made it clear that it will apply Federal Circuit precedent to the question whether a Lanham Act claim survives when it conflicts with a right protected by patent law.[11]

Although the Federal Circuit has on numerous occasions reiterated that a patentholder violates no protected right by publishing its patent or threatening suit,[12] neither the cases discussed in this section, nor any other Federal Circuit precedent addresses the viability of a claim similar to those addressed in *Hunter Douglas* and *Mikohn*, but brought under ·a *federally created* cause of action, such as the Lanham Act. The distinction is a crucial one.

### (3)

### Reconciling § 43(a) and Federal Patent Law

#### (i) Is bad faith required?

To summarize the discussion so far, it would appear on the one hand that, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the [claimant] can show that the patentholder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed.Cir. 1998). On the other hand, the Lanham Act imposes liability upon a party who "uses in commerce any ... false or misleading description of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics [or] qualities of his or her or another person's goods." 15 U.S.C. § 1125(a)(2). Therefore, when a patentholder exercises his or her right under federal patent law to publicize his patent, he may, if mistaken as to the scope of his or her patent, risk violating the Lanham Act.

**11.** The Federal Circuit has offered no authority, beyond its responsibility for adjudicating patent issues, to justify its assertion that it is empowered to define the limits of other, non-patent specific, federal statutes even in the face of conflicting regional circuit authority. While the Court of Appeals cited two previous Federal Circuit opinions as examples of such adjudication, *see Midwest*, 175 F.3d at 1361, review of those cases revealed no additional authority. This presents a district court. with a quandary. While a district court must adhere to Federal Circuit precedent in interpreting and applying patent law, a district court is also required to respect the authority of its regional circuit court when interpreting other non-patent specific federal statutes. Until the question of the Federal Circuit's authority to issue binding interpretations of non-patent specific statutes when they are applied to patents is resolved, its opinion in *Midwest* will create enormous difficulties for a district court; it will require the district court to engage in a precarious balancing act.

**12.** *See, e.g., Scosche Ind. v. Visor Gear*, 121 F.3d 675, 681 (Fed.Cir.1997); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709 (Fed. Cir.1992); *Concrete Unlimited Inc. v. Cementcraft Inc.*, 776 F.2d 1537, 1539 (Fed.Cir. 1985).

As the Federal Circuit has noted, if there is an allegation of bad faith in an unfair competition claim, the claim will not conflict with federal patent law. It is only when there is no such allegation that a conflict may arise. However, in both of the district court patent infringement/Lanham Act cases discussed *supra*, the district courts specifically noted that an allegation of bad faith was not required to establish a viable Lanham Act claim.

In *Laser Diode*, the discussion was dicta. *See Laser Diode*, 964 F.Supp. at 95. But, in *Brandt Consolidated, Inc.*, the court wrote:

> Contrary to what both Plaintiff and Defendants seem to believe, bad faith is not an element of this cause of action. Both parties seem to have confused the requirements of the common law action for unfair competition, which requires bad faith, with the requirements of a Lanham Act action. The well-settled rule is that there is no requirement under the Lanham Act that a false representation be made wilfully or with the intent to deceive. A mistake is not a defense to an action under § 43(a).

*Brandt*, 801 F.Supp. at 174.

Thus, at least one district court has specifically held that, in a case involving false patent infringement claims, there is a viable Lanham Act claim absent allegations or evidence of bad faith. Indeed, it is difficult to see why this would not be the case. *But see Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 1997 U.S. Dist. Lexis 22241 (E.D.Wis. Nov. 26, 1997) (interpreting *Pro–Mold*, to imply that not even a notice of infringement sent in bad faith would provide a recovery under the Lanham Act).

When facing a putative conflict between two federal laws, it is critical that a court address the policy interests raised by the situation at bar, and how those interests may be best reconciled. *Cf. Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 248, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199 (1970) ("Statutory interpretation requires [that] consideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions."). Although *Brandt* and *Laser Diode* appear to create a conflict between the Lanham Act and federal patent law, the policy interests of both sets of laws seem to be served by the enforcement of the Lanham Act in situations such as the one at hand, even when there is no allegation of bad faith. Moreover, as the Federal Circuit has acknowledged, even when the conflict is between federal law and state law, in determining the preemptive effect of federal patent law, an inquiry into the policy interests which would be served by preemption are a paramount consideration. *See Hunter Douglas*, 153 F.3d at 1333. Such a balancing is surely equally as appropriate, if not more so, in evaluating two possibly conflicting federal statutes. The Federal Circuit has enumerated the interests served by patent law as protection of invention, innovation, and the public domain. *Hunter Douglas*, 153 F.3d at 1333–34. Of course, uniformity is also a paramount concern in the application of federal patent law.

While, as noted by the Supreme Court and the Federal Circuit, patent law and the law of unfair competition (including the Lanham Act) may offer complementary protection for intellectual property, *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165, 109 S.Ct. 971, 985, 103 L.Ed.2d 118 (1989) (addressing state law unfair competition statute); *Midwest*, 175 F.3d 1356, 1360–61 (holding that federal patent law will not necessarily foreclose Lanham Act recovery for alleged trade dress infringement); *Hunter Douglas*, 153 F.3d at 1334, it is not surprising that the Lanham Act may on occasion conflict with federal patent law when it is utilized as a protector of the competitive marketplace. The two laws are then aimed at fulfilling different policy goals. Patent law seeks to achieve its goal by granting a property right. A patent is an artificially maintained monopoly supported and enforced

by the government and the courts in order to maintain other goals such as fostering invention and innovation. The Congress has made clear that the Lanham Act, originally conceived of as offering only trademark protection akin to a protection for a property right, is now much more than a trademark act. As noted, the 1988 amendments to § 43(a) of the Act were specifically intended to codify the use of the Act as a federal ban on unfair competition and false advertising to protect competition and the public. *See* McCarthy at § 27:25.

In the case of a patentholder who in good faith believes that his patent is being infringed, the interests of patent law in allowing suits for or notice of infringement are clear. The very point of the patent is the right to exclude others from using it. If one could not bring suit against an infringer, the patent would be useless. To go one step farther, if a patentholder can bring suit, that patentholder must be able to notify an infringer that he or she will bring suit. Not only does this right to notify seem to be self-evident, but it also serves a vital policy interest of its own in that it protects innocent infringers from the costs of legal actions which could have been avoided through the use of a notice.

However, when the claim of patent infringement is erroneous, even if made in good faith, the interests supporting patent protection are not necessarily served by protection of that claim; no legitimate property right is vindicated, and further innovations may actually be discouraged in that new solutions or inventions which compete with patented products may be stifled through the costs, delays in distribution, and dangers associated with infringement suits. Moreover, while in 1913, long before the passing of the present day Lanham Act, the Supreme Court wrote in *Virtue* that the ability to notify infringers is a fundamental basis of a patent's value, it is an overstatement to say that without conferring the ability to falsely notify infringers of their purported infringement a patent loses its value. It is true that a rule that puts a patentholder at risk, if he in good faith but wrongly asserts a claim of patent infringement, may diminish, though hardly destroy, the value of a patentholder's property right because he may be reluctant to press his rights if there is any doubt of the validity of the infringement claim. But protection of competition is a value at least equal to the protection of the risk-adverse.

Most importantly, the imposition of Lanham Act liability seems to carry few or no costs prejudicial to the rights of a patentholder. Once liability is established under the Lanham Act, § 35 of the Act allows the recovery, "subject to the principles of equity, [of] ... (1) defendant's profits, (2) any damages sustained by the plaintiff, [ ] (3) the costs of the action," and, in instances of willful misconduct, treble damages. 15 U.S.C. § 1117(a), (b). However, where the violation of the Act was not willful, the recovery under the Lanham Act has generally been limited to actual damages suffered by the Lanham Act claimant as a result of the false advertising, or trademark infringement. *See, e.g., George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir.1992); *American Automobile Assoc. v. AAA Automobile Club of Queens,* No. 97–CV–1180, 1999 WL 97918 (E.D.N.Y. Feb. 8, 1999); *see generally SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 186, 189 (3d Cir.1999); *Bishop v. Equinox Int'l Corp.,* 154 F.3d 1220, 1223 (10th Cir.1998); *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 968 (D.C.Cir.1990). Thus, where a false representation was not made knowingly or in bad faith, claimants have been limited to remedies such as recovery for damage to reputation or diverted profits. *See, e.g., Burndy Corp. v. Teledyne Ind., Inc.,* 748 F.2d 767, 771 (2d. Cir.1984); *Grant Airmass Corp. v. Gaymar Ind., Inc.,* 645 F.Supp. 1507, 1514 (S.D.N.Y.1986); *see also* McCarthy, at § 27:42, 27:43. Significantly, the Second Circuit has noted that "the [Lanham Act's] invocation of equitable principles as guide-

posts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief," *Basch,* 968 F.2d at 1537, and that an award of damages does not, and presumably should not, "create a windfall judgment at the defendant's expense." *Id.* at 1539.

In the case of a valid claim of patent infringement, obviously, no liability would lie under the Lanham Act. In the case of an invalid but "honestly made" claim of patent infringement, the damages from the claim are, under the Lanham Act, commensurate with the harm suffered by the Lanham Act claimant, i.e., the damages are equivalent to business that the claimant lost as a result of the false advertising. Indeed, in keeping with the Lanham Act's equitable basis, a district court would seem to be required, in a "good faith belief" situation, to exercise its discretion in awarding damages in such a way that the plaintiff not receive a windfall but only the benefit defendant actually received at plaintiff's expense. *See Basch,* 968 F.2d at 1537, 1539.

In this manner, the survival of a Lanham Act claim for false advertising based on an allegedly false accusation of patent infringement permits a system through which the falsely accused infringer may be made whole without penalizing patentholders for asserting their rights in the way that state law unfair competition claims—because of broader remedies—might. Because a false claim of patent infringement is actionable only when it is essentially false comparative advertising, a plaintiff's damages from that claim will usually be mirrored by gains the defendant accrued through its erroneous claim concerning the reach of the patent. The risk of error,

thus, falls on the patentholder, but only to the extent that the mistake actually damaged the Lanham Act claimant, which, presumably is the same extent that the mistake enriched the defendant. In sum, in a case such as the one at bar, where a competitor is the alleged victim of false advertising which depicted its products as infringing on the patent of another competitor, the survival of the Lanham Act claim, regardless of the good or bad faith belief of the accuser in its accusations, seems to be in accord with the policy interests of both the Lanham Act and patent law.[13] Furthermore, because the Lanham Act is a federal law, its application to patent cases will neither create a patchwork of patent rights nor limit the federal government's constitutional right to control patents and the monopoly they create. Thus, there is no reason to hold that federal patent law "trumps" the Lanham Act in these cases. And, therefore, Spotless' motion to dismiss must be denied.

### (ii) Is standing limited to competing manufacturers?

As a final note, it should be mentioned that this analysis has addressed only competing manufacturers, the issue as it appears in the case at bar. Patent law, however, allows suit for infringement against anyone who uses or sells an infringing item. This is the basis from which the publication of infringement gets its economic power; retailers who sell an allegedly infringing item open themselves up to liability for infringement. While the logic of the position taken above, as well as the policy arguments laid out, might seem to require Lanham Act standing for retailers who are falsely charged with infringe-

---

**13.** It should be mentioned that it would be expected that this type of action would most commonly arise, as it does in this case, as a counterclaim. If the publication by a patentee of alleged infringement by a competitor did not result in the competitor's desisting from his infringement, a suit for infringement would follow, and the Lanham Act counterclaim would be appropriate at that point. If

the suit for infringement did not follow, that failure to enforce one's patent rights after publishing the fact of infringement could give rise to a presumption of bad faith in and of itself, and, therefore, also give rise to a sustainable state claim of unfair competition. *See Kaplan v. Helenhart Novelty Corp.,* 182 F.2d 311 (2d Cir.1950).

ment, a careful analysis shows that such standing is not indicated.

Although the Lanham Act was intended to protect consumers as well as competitors, "[c]ourts have generally held that consumers do not have standing to sue [under § 43(a) ]." McCarthy at §§ 27:20, 25. And, the legislative history of the 1988 revisions of the Act indicates that though there was discussion of including language which would have specifically included consumers within § 43(a)'s ambit, that language was deleted in committee. *See Serbin v. Ziebart Int'l,* 11 F.3d 1163, 1177 (3d Cir.1993). Thus, in order to bring a Lanham Act claim, a plaintiff must demonstrate that he or she has a "reasonable interest to be. protected." *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir.1994). *See also Berni v. International Gourmet Restaurants of Am., Inc.,* 838 F.2d 642, 648 (2d Cir.1988) ("This court has limited standing to assert a section 43 claim to a 'purely commercial class' of plaintiffs. *Colligan v. Activities Club of New York Ltd.,* 442 F.2d 686, 692 (2d Cir.1971), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971)... [I]t is apparent that, at a minimum, standing to bring a section 43 claim requires the potential for a commercial or competitive injury."); *Serbin v. Ziebart Int'l,* 11 F.3d 1163 (3d Cir.1993); *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213 (9th Cir.1987). Normally, a retailer will not directly compete with a manufacturer nor will a retailer's interests automatically be harmed by manufacturer's advertising. *See Conte Bros. Automotive, Inc. v. Quaker State–Slick 50, Inc.,* 165 F.3d 221, 234 (3d Cir.1998) ("loss of sales at the retail level because of alleged false advertising does not impact the [retailer's] ability to compete; nor does it detract from the [retailer's] good will").

While, at first glance, not to permit retailers or consumers to sue under the Lanham Act appears to be an anomalous result, a remedy under the Lanham Act would not, in actuality, be in keeping with the policy analysis above. First, as noted by the Third Circuit, a retailer's damages will often not reflect a manufacturer's gains because the two are not in direct competition. *See Conte Bros.,* 165 F.3d at 234–35. Second, while the retailer's damages might likely be smaller than the manufacturer's gains, they would also tend to be duplicative of the damages of other retailers and the damages of a competing manufacturer. Thus, allowing such damages could create a penalty on patentholders for exercising their legal rights. Third, the innovative producer would only be protected indirectly by such a suit. And finally, the manufacturer of the product which is accused of infringing will have such a strong incentive to protect its profits that protection of the manufacturer should be sufficient to protect the competitive marketplace. In any case, that question need not be definitively answered at this time.

### Conclusion

Carlisle has presented a valid claim under the Lanham Act for unfair competition and false advertising, and because recovery under the Lanham Act is not foreclosed by federal patent law, Spotless' motion for dismissal for failure to state a claim is denied.